said it was unnecessary for him to add much to what had been said by his brethren, Henderson and Lowrie. But it might be asked what the common law of England was when it was adopted by this country, for such as it was, it must be observed. It had been very properly remarked that if the Court were not met to determine in what manner indictments of this kind should be formed, this strictness would not be required. Any one proposing that wounds should be described as laid down in the books would be considered as evincing but little *Page 313 
knowledge of legislation. The reason given by writers for observing this particularity is that the Court may (463) see that the wound is such as might produce death. The causes of death appeared to be laid with sufficient certainty in this indictment; but as we find from all the authorities, from Coke to East, that whenever death is stated to be produced by a wound, the dimensions of the wound must be given, it cannot now be dispensed with. It appears from West that the law was not formerly so; but this was the law when the common law of England was introduced here. All modern writers agree that the dimensions of the wound must be stated — not for any good reason, he admitted, but it was not for the Court to legislate, but to decide, as they had sworn to do, according to the law. The exceptions stated in the books prove the rule. When bruises or blows are stated, no dimensions are necessary; but where a wound is laid, it has been an invariable custom to state its dimensions.